UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK CAMBRE                                              CIVIL ACTION

VERSUS                                                   NO. 05-6863

JEFFERSON PARISH SHERIFF'S OFFICE  ET AL.                SECTION "M" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Mark Cambre, is a convicted inmate currently incarcerated in the Forcht Wade Correctional Center ("Wade") in Keithville, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Jefferson Parish Sheriff's Office, which has appeared in the case through Sheriff Harry Lee in his official capacity, and Warden Glen Jambon.  Cambre alleges that while incarcerated in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana, during Hurricane Katrina in late August 2005, he was endangered and exposed to unsafe conditions, constituting cruel and unusual punishment, when defendants failed  timely to evacuate the prison and required him to do certain cleanup work in the jail. The exclusive relief

he seeks is monetary compensation "for my pain and suffering in the sum of ($250,000) two hundred and fifty thousand dollars." Record Doc. No. 1 (Complaint at ¶ V).

On March 28, 2006, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Daniel R. Martiny, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Cambre testified that he is currently incarcerated based on a conviction for distribution of cocaine on January 9, 2006, for which he is serving a ten-year prison sentence. Cambre confirmed that the claim he makes in this case is based exclusively on events that occurred while he was incarcerated in the Jefferson Parish Correctional Center ("JPCC") in Gretna. He stated that he left the JPCC on August 30, 2005, "the day after the hurricane," and was later temporarily returned to JPCC during January 3 - 17, 2006. Cambre confirmed, however, that his claim in this case is limited to the two-day period of time during which he was in the Jefferson Parish jail when Hurricane Katrina struck, August 29 and 30, 2005. He also testified that when he left the jail on August 30th, it was part of an evacuation of all inmates from the jail to Louisiana Department of Corrections ("DOC") facilities.

Asked to specify whom he is suing in this case, Cambre testified that he intends to sue Sheriff Harry Lee and Warden Jambon, but <u>not</u> Jefferson Parish or its Parish President Aaron Broussard. He stated that he does not wish to sue anyone other than the sheriff and Warden Jambon, and that he mentioned Parish President Broussard in his written submissions only because he wishes to call Mr. Broussard as a witness in the case.

Cambre testified that, during the two-day period he spent in the jail during Hurricane Katrina, all electrical power in the jail went out, beginning before daybreak on August 29, 2005 as Hurricane Katrina struck the area. He said that the power loss resulted in a loss of ventilation in the jail, that the backup generator system in place at the jail would not run the ventilation system on the jail pod where he was housed, and that there were no windows that could be opened.

Plaintiff testified that, after the power went out, "diesel fuel came in the jail, and they had cut the water off, and then we didn't have no water at all." He stated that "to my knowledge, the tank next to the jail busted and erupted fuel, is what the deputies were saying, but then after I wrote the grievance . . . I got paperwork saying that a barge, a drydock had broke loose and hit a barge in the river and forced the fuel over the levee into the jail."

Cambre testified that diesel fumes entered the jail through the ventilation system, which was not "blowing out," making breathing difficult. He alleged that the diesel fuel may have come from a chemical plant located near the jail, but noted that the report he received from JPCC officials in response to his grievance concerning the incident stated that it had come from something on the nearby Mississippi River when a drydock hit a fuel barge.

Cambre acknowledged that he really did not know where the diesel fuel had come from, "but I was a trusty, so we was ordered to go down there and clean up the fuel, mop up the fuel that was coming in." He said that deputies wearing raincoats left the jail during the hurricane to try to determine the source of the diesel fuel, and those deputies told him it was coming from a nearby fuel tank. After the hearing, with plaintiff's consent, defense counsel submitted a copy of the response to Cambre's grievance about which plaintiff testified, and it has been filed in the record. Record Doc. No. 21.

Plaintiff testified that he participated in the cleanup of the spilled diesel fuel and then was evacuated from the jail the next day. He said that, during the hurricane, the wind was blowing water mixed with diesel fuel into the jail. He said it came into the jail both through the front door and in a back warehouse area, and he was part of the inmate sanitation crew that mopped it up. Cambre testified that the diesel fuel did not enter the

cell area of the jail, "but the fumes was coming back through the vents that was real strong and had us nauseated . . . when we was in the cell."

Cambre testified that sheriff's deputies summoned him and other inmates from the cells "periodically" to mop up water. He stated that he mopped up fuel "a couple of different times" on Monday, August 29th, maybe three or four different times on that day. He estimated that he spent several hours, an hour or a little more on each separate shift, as part of a crew of about four inmates mopping up water and diesel fuel that had gotten into the jail on that day.

Asked to describe the conditions of his confinement during the two-day period about which he complains in this case, Cambre said that in addition to being exposed to diesel fuel mixed with water during the cleanup, "the ventilation system, and then the sewer that was backed up into the cells that we couldn't flush the toilets. They said they had plenty water to flush toilets, but them buckets they sent wouldn't flush toilets . . . and the toilets were overflooding with human waste."

Cambre also stated that he was not given proper equipment when he was sent to clean up the diesel fuel and water. "We didn't have no gloves, no respirators and [we] weren't able to take a shower after we mopped up all this fuel." He said the only items with which he was provided were a mop and a bucket.

5

Asked what injuries he suffered as a result of any of the conditions to which he was exposed, including the cleanup, the lack of ventilation and the sewage backup and water problems, Cambre said, "I'm going through a mental stress management class and all that right now, just mentally stressed out by the whole situation being there, them not evacuating us before the hurricane got there after the mandatory evacuation. It just more or less put a whole lot of stress on me, had me worried and all that." He added that he experienced some headaches and nausea at the time of the storm, "but they brought me some Tylenol, the medical system, and that kind of went away after some period of time getting fresh air."

Cambre testified that he was evacuated from the jail at about 10 a.m. on August 30, 2005, the morning after the hurricane struck. He said he was first taken to Hunt Correctional Center in St. Gabriel, Louisiana and then to five different institutions during the evacuation. He confirmed that he spent a total of about 30 hours in the Jefferson Parish jail experiencing conditions precipitated by the hurricane before he was evacuated.

On cross-examination, Cambre alleged that the President of Jefferson Parish had appeared on television and issued a mandatory evacuation of Jefferson Parish before Hurricane Katrina struck.

Cambre confirmed that, on the date of the hurricane, he was being held in the JPCC as a pretrial detainee as to the cocaine charge to which he subsequently pled guilty and as a parole violator, but he also testified that his parole for a previous theft conviction had been revoked before the storm.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the

7

plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

8

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, read broadly,[1] plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. As set out below, the applicable law bars Cambre from recovering the only remedy he seeks in this case.

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

## II.    EMOTIONAL INJURIES

Plaintiff's complaint is deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary damages, which is the only relief sought in his complaint. Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e): "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury."

In several recent decisions, the Fifth Circuit has enforced this statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by Cambre in this case. Harrison v. Smith, No. 03-40924, 2003 WL 22946387, at *1 (5th Cir. Dec. 11, 2003); Criollo v. Wilson, No. 02-21124, 2003 WL 22295491, at *1 (5th Cir. Oct. 7, 2003); Atkinson v. Johnson, 2003 WL 22012901, at *1 (5th Cir. Aug. 26, 2003); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, 351 F.3d 626, 630 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)). Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from

recovering for their emotional and mental injuries" when the only physical injuries they had suffered were nausea and one incident of vomiting. Id. Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury. Siglar, 112 F.3d at 193.

In this case, the only physical injuries alleged by Cambre as a result of his exposure in JPCC to 30 hours of adverse conditions caused by Hurricane Katrina were nausea and headaches that cleared up after he was given medicine by JPCC staff and received fresh air. Under Alexander and Siglar, these are mere de minimis injuries which do not meet the "physical injury" standard contained in Section 1997e(e).

Cambre testified that his principal damage was stress and emotional upset. As the statute provides and Alexander makes clear, Cambre is precluded as a matter of law from recovering general damages for the "psychological" or other emotional injury he has asserted. Because that is the only relief he seeks in this case, his complaint must be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __15th__ day of May, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE